# Ripley, Appellant, *v.* Ripley.

*Mortgage—Bond—Deed—Second mortgage—Parent and child.*

Where a father and mother convey a farm to their son in consideration of "his paying all our just debts, our care and support during life, and our proper burial expenses," and the son executes to the grantors a bond and mortgage for a sum stated to secure the performance of the covenants in the deed, a second mortgage creditor of the same land under a mortgage created by the son, who has knowledge of the first mortgage and the bond accompanying it, has no standing to aver, after the son has paid the father's debts and funeral expenses, but has violated the covenant to support his mother, that the first mortgage had been paid and satisfied, because the aggregate of the payments made by the son was equal to or in excess of the amount of the first mortgage.

In such a case where it appears that the second mortgage was to secure a loan of money to provide for the payment of the father's debts, any understanding between the son and the second mortgagee as to the use to be made of the money borrowed by the former from the latter, or any interpretation by them of the contract between the son and his father, will have no effect on the rights of the mother under the first mortgage.

Argued May 20, 1907. Appeal, No. 45, April T., 1907, by plaintiffs, from decree of C. P. Erie Co., Nov. T., 1905, No. 2, dismissing bill in equity in case of John Ripley, Guardian of Alma Highmyer and Ira Highmyer, Minor Children of Mary Hood, formerly Mary Highmyer, deceased, v. Mary Ann Ripley and Isaac F. Ripley. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity to cancel a bond and mortgage. Before WALLING, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree of the court.

*Henry C. Yard,* with him *Albert B. Osborne* and *James W. Sproul,* for appellants.——It is a well-established principle of law that, while the prior mortgage creditor has a first lien upon the land, and is favored in some respects over subsequent lien creditors, yet the law is very careful to protect the rights

of the subsequent lien creditor, and especially so as to any action by, or with the consent of, the prior lien creditor: Loverin v. Humboldt Safe Deposit, etc., Co., 113 Pa. 6; Mitchell v. Coombs, 96 Pa. 430; Meigs v. Bunting, 141 Pa. 233.

If the court below is correct, that the bond and mortgage are "practically one instrument," then, under the authorities and the evidence in the case, both should have been ordered canceled and satisfied: Neale v. Dempster, 179 Pa. 569; Neale v. Dempster, 184 Pa. 482; Water & Gas Co. v. Jenkyn, 20 Pa. C. C. Rep. 102; Mitchell v. Coombs, 96 Pa. 430.

*E. L. Whittelsey*, for appellees.—The mortgage was given to secure the performance of the conditions of the bond, and the two papers are to be treated as if they were parts of one instrument, and are to be considered together, for the purpose of determining the meaning of the parties: Cummings v. Antes, 19 Pa. 287; Kennedy v. Ross, 25 Pa. 256.

If the two clauses in this mortgage are so totally repugnant to each other that they cannot stand together, the condition in relation to the support and maintenance being the first, must be enforced, and the latter rejected: 2 Blackstone's Com., 381; Straus v. Wanamaker, 175 Pa. 213.

OPINION BY HENDERSON, J., October 7, 1907:

David Ripley was the owner of a farm in Erie county. On March 6, 1899, he and his wife, Mary Ann, conveyed the farm to their son, Isaac F. Ripley. The consideration given by the grantee for the land is stated in the deed to be " his paying all our just debts, our care and support during life, and our proper burial expenses." At the same time Isaac F. Ripley executed and delivered his bond to the grantors in the penal sum of $3,000 conditioned "that if the party of the first part pays all just debts, that may stand charged against them, or either of them, at the signing of this bond, and take good and proper care, that is, to supply them with good furnished rooms, food and raiment, care in sickness, and burial expenses, the care is to extend during their natural life, and is to be furnished them on the estate they conveyed to him (unless otherwise agreed to by both parties). When the party of the first part has complied with these conditions, and completed

the contract in full, then this bond and mortgage shall be deemed fully paid, and all considerations in the deeds of conveyance of real estate deed, bearing date with this bond, shall be discharged in full, without any fraud or further delay; then this obligation to be void of none effect, otherwise to be and remain in full force and virtue." To secure the performance of the conditions of this bond the grantors took from the grantee a mortgage for $1,500 on the land conveyed, dated March 6, 1899, in which the conditions of the bond were recited. The mortgage was recorded March 8, 1899. The consideration stated in the mortgage was "the said debt or sum of $1,500, owing to the said parties of the second part as aforesaid, and for the better securing of the payment thereof, with interest thereon, according to the conditions of the said bond." The mortgage also contained the proviso that if first party should pay to second parties the sum of $1,500 and interest, "according to the condition of the above in part recited bond or obligation, then, and from thenceforth, these presents, and every matter and thing therein contained shall cease and be utterly null and void." At the time when these documents were executed David Ripley was indebted to the amount of more than $1,000 and these debts were afterwards paid by Isaac F. Ripley. He borrowed $1,000 from Mary Highmyer and gave a mortgage therefor August 1, 1899, on the land conveyed to him by his father which became a second lien on the land. This money was used by Isaac in the payment of debts which his father owed and which he had obligated himself to pay. He also paid his father's funeral expenses. Some time during the year 1903 Isaac left the farm and ceased to support or care for his mother. In 1905 a scire facias was issued on the Highmyer mortgage and while the writ was pending an amicable scire facias was issued on the first mortgage on which Isaac F. Ripley confessed judgment in favor of Mary Ann Ripley for $1,260, which included a collection fee of five per cent. Thereupon the plaintiff instituted this proceeding praying for a decree canceling the first mortgage and striking from the record the judgment entered on the amicable scire facias. There was evidence that at the time Isaac F. Ripley borrowed the money from Mary Highmyer he agreed that all payments of his parents' debts were to be credited on

the mortgage in their favor and that judgment should not be entered on the accompanying bond. It was conceded in the plaintiff's bill that Isaac F. Ripley had made default in his contract to support and care for his mother and the court found upon sufficient evidence that, considering the age, state of health and expectancy of life of Mary Ann Ripley, she sustained damages to an amount greater than $1,260 because of the failure of Isaac F. Ripley to support and maintain her. The appellant contends that the mortgage of Mary Ann Ripley was security for the payment of $1,500 only and that when the mortgagor had paid in debts of his father and mother and the funeral expenses of his father the amount of $1,500 his undertaking was performed, but this view of the instrument does not take full account of the object for which it was executed, nor give force to all of its material parts. It was intended to be, and is, a continuing security for the performance of the acts which the mortgagor agreed to perform. The mortgagees parted with their land for a consideration agreed upon. Whether that was greater than the value of the land is a matter with which we are not concerned. They had a right to name the price for their property. Isaac F. Ripley had an equal right to agree to pay what they demanded. A subsequent mortgage creditor of Isaac has no standing to complain that the latter agreed to pay more than the land was worth. The mortgage to David and Mary Ann Ripley was not given merely to secure the payment of David's debts. The court found that at the time of the conveyance the land was worth $2,200. The indebtedness was much less and there is no reason to suppose that it was the understanding of the parties that if Isaac paid $1,500 of indebtedness he was to be relieved from the other obligation to support and care for his parents and to bury them after they were dead. The mortgage was security to the mortgagees for the performance of all of the obligations assumed by the mortgagor. The security was not diminished by one-half when the mortgagor performed one-half of his agreements. The payment of the debts left a most material part of the contract unperformed, and the mortgage stood as security for the fulfilment of that part. The conditions of the bond are specifically referred to in the mortgage, and payment of the mortgage is called for according to the

conditions of the bond. The intention of the parties is unmistakable when the bond and mortgage are read together as they should be: Kennedy v. Ross, 25 Pa. 256. If it be conceded that the mortgagor's liability is limited to $1,500, this only fixes the amount of the damages to which the mortgagees are entitled in case of the failure of performance by the mortgagor. Under the circumstances most favorable for himself he could only say that he was not liable for more than $1,500 for the breach of his contract.

Any understanding between Isaac F. Ripley and Mary Highmyer as to the use to be made of the money borrowed by the former from the latter or any interpretation by them of the contract between Isaac F. Ripley and his father and mother would have no effect on the first mortgage. Mary Ann Ripley was not a party to any arrangement or agreement by which the grip of her mortgage on the land was relaxed. If the holder of the second lien is at a disadvantage it is because Isaac F. Ripley had too large an incumbrance on his property at the time he gave the second mortgage. But Mary Ann Ripley is not responsible for that. The second mortgage creditor knew of the existence of the first mortgage and the accompanying bond and the terms of the contract under which they were given and must abide by the legal consequences of the situation. The conclusions of the learned trial judge are justified by the record as presented.

The decree is affirmed.